UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Renee B. o/b/o W.M.C.,[1]

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

23-CV-570-LJV
DECISION & ORDER

---

On June 21, 2023, the plaintiff, Renee B. ("Renee"), brought this action under the Social Security Act ("the Act"). Docket Item 1. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that her grandson, W.M.C., was not disabled.[2] *Id.* On September 20, 2023, Renee moved for judgment on the pleadings, Docket Item 4-1; on October 16, 2023, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 6-1; and on October 30, 2023, Renee replied, Docket Item 7.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Renee applied for Supplemental Security Income ("SSI"), which is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a).

For the reasons that follow, this Court grants Renee's motion in part and denies it in part and denies the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

If there is a reasonable doubt as to whether the ALJ applied the correct legal standards, then upholding the determination "creates an unacceptable risk that a claimant will be deprived of the right to have his disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986; *see Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan,* 912 F.2d 8, 11 (2d Cir. 1990) (holding that the court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the . . . Act.")).

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

**DISCUSSION**

**I.    THE ALJ'S DECISION**

On September 23, 2022, the ALJ found that W.M.C. had not been disabled since Renee filed her application for SSI on W.M.C.'s behalf on June 27, 2019.  *See* Docket Item 3 at 23-24.  The ALJ's decision was based on the sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a).  *See* Docket Item 3 at 20-21.

At step one, the ALJ found that W.M.C. had not engaged in substantial gainful activity since Renee filed her application on June 27, 2019.  *Id*. at 21.  At step two, the ALJ found that W.M.C. suffered from three medically determinable impairments: "obesity, adjustment disorder, and anxiety disorder."  *Id.*  But the ALJ found that those impairments were "slight abnormalities" causing "no more than minimal functional limitations" and that W.M.C. did not have any severe impairment or combination of impairments.  *Id.* at 21-23.  The ALJ therefore proceeded no further and found that W.M.C. was not disabled.  *See id.* at 23.

**II.    ALLEGATIONS**

Renee argues that the ALJ erred in two ways.  Docket Item 4-1 at 8-13.  First, she argues that the ALJ erred by failing even to discuss the questionnaire completed by W.M.C.'s first grade teacher.  *Id.* at 9.  Second, she argues that the "Appeals Council erred in rejecting new and material evidence that undermined the ALJ's decision."  *Id.* at 11.  This Court agrees that the ALJ and Appeals Council erred and therefore remands the matter to the Commissioner.

## III.     ANALYSIS

"The standard for a finding of severity under Step Two of the sequential analysis is de minimis and is intended only to screen out the very weakest cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014).  For a claimant under the age of 18, an impairment is not severe if it is only a slight abnormality or combination of abnormalities that causes no more than minimal functional limitations.  20 C.F.R. § 416.924(c).  So anything more than a slight problem is "severe" in the social security context.  *Castillo v. Barnhart,* 2002 WL 31255158, at *11 (S.D.N.Y. Oct. 8, 2002) ("[I]t does not appear possible for an impairment to be less than severe but more than slight or minimal, because severe includes the entire range above slight or minimal.") (internal quotations and citations omitted).

In deciding whether a child is disabled, which necessarily includes deciding whether an impairment is "severe," 20 C.F.R. § 416.924(c), the ALJ must consider evidence from both medical and nonmedical sources, including parents and school employees, *id.* § 416.924a(a)(2)(i-iii).  Such evidence includes "teacher questionnaires, teacher checklists, group achievement testing, and report cards."  *Id.* § 416.924a(b)(7)(ii); *see also Tina T. o/b/o J.J.W. v. Comm'r of Soc. Sec.,* 2024 WL 4463298, at *5 (N.D.N.Y. Apr. 19, 2024) (explaining that because "Teacher Questionnaires are nonmedical opinions," "the standards for articulation are lower" but that the ALJ still "must explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning.") (internal quotations and citations omitted), *report and recommendation adopted,* 2024 WL 4132200 (N.D.N.Y. Sep. 10, 2024).

### A. Ms. Crocker's Teacher Evaluation

On February 10, 2020, W.M.C.'s first grade teacher, Ms. Crocker, provided a teacher questionnaire. Docket Item 3 at 336-43. She stated that she had been with W.M.C. from nine in the morning until four in the afternoon every school day since September 5, 2019. *Id.* at 336. Ms. Crocker opined that W.M.C. had a very serious problem working without distraction on a daily basis; a serious problem seeking attention and expressing anger appropriately, working at a reasonable pace/finishing on time, organizing things and school materials, and changing from one activity to another without being disruptive; an obvious problem completing work accurately without careless mistakes; and a slight problem paying attention when spoken to directly, focusing long enough to finish an assigned activity or task, refocusing when necessary, waiting to take turns, and completing class/homework assignments. *Id.* at 338-39. She noted that when W.M.C. "does not feel [able to] be successful in a task, [W.M.C.] shuts down and gets angry." *Id.* at 338. And she said that when W.M.C. "gets upset or frustrated[, W.M.C.] remove[s him or her]self from the situation" and "comes back when . . . calmed." *Id.* at 339.

The ALJ does not even mention Ms. Crocker or her questionnaire in his analysis. The closest he comes is his statement that he considered "all of the relevant evidence," including "information from other sources, such as school[]teachers." *Id.* at 21.[4] Renee

---

[4] Notably, the ALJ discussed and found persuasive a teacher questionnaire completed by Rachel Hovey, Docket item 3 at 23, who saw W.M.C. daily—but sometimes remotely—for five months and opined that W.M.C. had no limitations in any categories, *see id.* at 374-81. The ALJ said that he found Ms. Hovey's opinion "persuasive" because it is "consistent with the rest of the record." *Id.* at 23. But as noted, the ALJ did not even mention the inconsistent findings of Ms. Crocker, another teacher who also saw W.M.C. daily for five months.

argues that Ms. Crocker's opinion, in conjunction with the evidence rejected by the Appeals Council, "undermines the ALJ's finding that [W.M.C.'s] impairments were nonsevere." Docket Item 4-1 at 13. This Court agrees.

It is difficult to fathom how the ALJ could find that W.M.C.'s adjustment and anxiety disorders were "slight," and limitations "minimal," without explicitly addressing the evaluation of a teacher who had been with W.M.C. virtually all day, every day, for more than five months. *Id.* at 336-43. And this Court certainly cannot understand or evaluate the ALJ's conclusion without knowing whether and to what extent the ALJ considered that specific evaluation and why it did not evidence more than "slight" or "minimal" problems.

The Commissioner argues that this case is similar to *Thompson o/b/o E.I.E.G. v. Berryhill,* 2019 WL 590680, at *3 (W.D.N.Y. Feb. 12, 2019), where "this [c]ourt . . . rejected the argument that remand was required for the ALJ to consider a teacher's assessment where, as here, the ALJ referred to the teacher's questionnaire at the hearing and indicated in the decision that he considered [the] claimant's educational records." Docket Item 6-1 at 16. At the hearing in *Thompson,* the ALJ summarized the substance of the teacher questionnaire that was not mentioned in his decision, and in his decision he said that he "considered 'information from other sources, such as school[]teachers.'" 2019 WL 590680, at *3. Along the same lines, during the hearing here, the ALJ said that "most of [Ms. Crocker's] ratings . . . don't seem to be all too bad,"

Docket Item 3 at 126,[5] and in his decision said that he "considered . . . information from other sources, such as school[]teachers." *Id.* at 21.

But in contrast to *Thompson*, the ALJ here did not find any of W.M.C.'s impairments to be severe and therefore did not even address any of the functional domains. *Compare Thompson,* 2019 WL 590680, at *2 (ALJ's finding learning disability/auditory processing disorder and oppositional defiant disorder to be severe impairments and assessing those impairments in the six domains), *with* Docket Item 3 at 21 (finding W.M.C.'s impairments not to be severe). So while the questionnaire at issue in *Thompson* "would not have compelled a finding that E.I.E.G. was disabled," 2019 WL 590680 at *3, the issue here is whether the questionnaire suggests that the impairments were anything more than "minimal" or "slight." *Thompson* therefore is inapposite. *Cf. Bradley o/b/o C.B. v. Berryhill*, 2017 WL 8287642, at *2 (W.D.N.Y. Aug. 5, 2017) ("This Court cannot determine, as a matter of law, that a proper consideration of C.B.'s additional medically determinable impairments would have had no effect on the analysis of her limitations.").

In sum, the ALJ erred in not at least mentioning Ms. Crocker's evaluation and explaining why it did not make a difference. And while that error alone might not require remand, it was compounded by the failure of the Appeals Council to accept the new evidence that Renee submitted.

---

[5] After the ALJ made this observation at the hearing, he asked Renee whether W.M.C. had "gotten worse . . . over the years" since Ms. Crocker completed her questionnaire; Renee responded that W.M.C. had a "very drastic" change in behavior. *Id.*

### B. The Appeals Council's Rejection of New Evidence

Social Security regulations allow a claimant to submit additional evidence to the Appeals Council in support of a Request for Review, and the Appeals Council must accept the evidence as long as it is new, material, and relates to the period on or before the date of the ALJ's decision. *Hightower v. Colvin,* 2013 WL 3784155, at *3 (W.D.N.Y. Jul. 18, 2013) (citing 20 C.F.R. §§ 416.1470(b), 416.1476(b)(1)). Evidence is new "if it did not exist prior to the ALJ's decision and is not cumulative of what is already in the record." *Anthony P.B. v. Comm'r of Soc. Sec.,* 2021 WL 288769, at *3 (W.D.N.Y. Jan. 28, 2021) (citing *Pollard v. Halter,* 377 F.3d 183, 193 (2d Cir. 2004) (summary order)). "Evidence is material if it is relevant to the claimant's condition during the time period for which benefits were denied and there is a reasonable probability that it would have influenced the Commissioner to decide the claimant's application differently." *King v. Comm'r of Soc. Sec.,* 2020 WL 5248473, at *1 (W.D.N.Y. Sep. 2, 2020) (citing *Webb v. Apfel,* 2000 WL 1269733, at *14 (W.D.N.Y. Feb. 8, 2000).

"[N]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." *Perez v. Chater,* 77 F.3d 41, 45 (2d Cir. 1996). "If the Appeals Council fails to fulfill its obligations under [section] 416.1470(b), 'the proper course for the reviewing court is to remand [to the ALJ] for reconsideration in light of the new evidence.'" *Hollinsworth v. Colvin,* 2016 WL 544298, at *3 (W.D.N.Y. Oct. 6, 2016) (citing *McIntire v. Astrue,* 809 F. Supp. 2d 13, 21 (D. Conn. 2010)).

Although weighing the evidence and resolving conflicts is the province of the Commissioner, courts in this circuit have not hesitated to remand when new evidence

8

"undercuts" the ALJ's reasoning.  See *King*, 2020 WL 52484723, at *5-6 (citing *Lugo v. Berryhill*, 390 F. Supp. 3d 453, 460-61 (S.D.N.Y. 2019) (remanding where Appeals Council rejected new evidence based on reasonable probability standard but failed "to come to grips with the fact that the new evidence undercut[ ] the stated rationale of the ALJ"); *Stratton v. Colvin*, 51 F. Supp. 3d 212, 218-19 (N.D.N.Y. 2014) (remanding where Appeals Council cursorily rejected new medical opinion that provided context to earlier medical opinion rejected by ALJ and addressed issues raised by ALJ in rejecting earlier opinion).

Here, the ALJ noted that W.M.C. was "diagnosed with adjustment disorder and anxiety disorder, but there are no opinions from a treating source regarding the severity of the impairments, and the mental status examination notes that all areas are within normal limits."  Docket Item 3 at 23.  But the evidence rejected by the Appeals Council filled that gap and undermined the ALJ's finding that W.M.C.'s adjustment and anxiety disorders were only slight and minimal.  *See generally, Taneshia G. o/b/o K.T.D. v. Comm'r of Soc. Sec.,* 2022 WL 138607 (W.D.N.Y. Jan. 14, 2022) (remanding where evidence rejected by the Appeals Council contradicted the ALJ's reasoning for finding claimant's impairments were not severe).

The new evidence that Renee submitted to the Appeals Council comprised seventy-four pages of August 2021 medical records from the University of Rochester's Pediatric Behavioral Health & Wellness Center.  Docket Item 3 at 41-103.  W.M.C. went to the "crisis intervention services" because of "concerns surrounding trauma history, reports of seeing and hearing things that are not there, and emotional and behavioral dysregulation."  *Id.* at 54.

The new records noted that W.M.C. had been taken to the clinic because of

> Excessive anxiety, worries, or related behaviors that markedly exceeds the expected level for [W.M.C.'s] stage of development; [a]utonomic hyperactivity (e.g., rapid heartbeat, shortness of breath, dizziness, dry mouth, nausea, diarrhea); [f]eeling constantly on edge, concentration difficulties, trouble falling or staying asleep, and a general state of irritability; [r]epeated angry outbursts (e.g., screaming, crying, throwing objects, thrashing on ground, refusing to move) that are out of proportion to the precipitating event or in defiance of direction from an adult caregiver; [p]oor peer relationships due to aggressiveness and anger difficulties; [d]emonstrates [sic] sad, irritable, or flat affect; [r]eports [sic] suicidal/self-harm thoughts and/or actions; [d]emonstrates [sic] sleep disturbance and low energy[.]

*Id.* at 52. During that visit, Renee told the provider that W.M.C. "tried to eat glass" and "stabbed self with a pencil (minor poke that broke the skin)." *Id.* at 57. W.M.C. reported thoughts of self-harm or passive suicidal ideation when angry and felt "shaky" during the session. *Id.* at 57-58. W.M.C. also reported hearing "voices . . . inside [the] head but could not recall who they sound like or what they say[,] and . . . see[ing] shadows behind the window" that are frightening and being "unsure [about] see[ing] anything else [that] is not there." *Id.* at 59. The provider noted that "the diagnosis that best fits [W.M.C.] is Other Specified Trauma- and Stressor Related Disorder based on reported exposure to trauma and the development of emotional and behavioral dysregulation." *Id.*

Progress notes dated August 16, 2021, documented W.M.C.'s "difficulty falling asleep [and] staying asleep, nightmares[,] and enuresis." *Id.* at 74. Progress notes dated August 30, 2021, noted that W.M.C.'s behavioral regulation had improved but that W.M.C. still described "some instances [of] hearing 'mumbles' or seeing 'things,'" . . . most often . . . when . . . not sleeping well." *Id.* at 98-99.

The Appeals Council acknowledged this evidence but nonetheless declined to refer it to the ALJ because it "does not show a reasonable probability that it would change the outcome of the decision." Docket Item 3 at 6. This Court has reviewed those medical records and disagrees. Especially insofar as it corroborates Ms. Crocker's evaluation addressed above, the newly submitted evidence might well have changed the ALJ's finding that W.M.C.'s anxiety and adjustment disorders were "slight" and "minimal," and therefore "not severe."[6]

At the very least, the new evidence sheds light on W.M.C.'s previously diagnosed adjustment and anxiety disorders—conditions that the ALJ determined were not severe because they "cause no more than minimal functional limitations"—and therefore is material to W.M.C.'s condition during the relevant time period. *Id.* at 21. And if the ALJ had reviewed the evidence submitted to the Appeals Council, he may have found W.M.C.'s adjustment and anxiety disorders to be more than minimal and therefore continued his analysis by addressing the domains at step three.[7] *Daniella A v. Comm'r*

---

[6] This evidence also corroborates records from Gateway-Longview noting that W.M.C. had a serious mental illness or emotional disturbance. *See* Docket item 3 at 591-93. The ALJ considered the records from Gateway-Longview and noted the diagnosis of adjustment disorder, but he apparently discounted that diagnosis because "a mental status examination revealed a normal appearance, normal posture, average eye contact, normal motor activity, cooperative attitude, euthymic mood, full affect, clear speech, logical thought process, normal perception, normal thought content, no delusions, no danger to self or others, normal cognition, average intelligence, and normal insight and judgment." *Id.* at 22 (citing *id.* at 619-21).

[7] To determine whether an impairment or combination of impairments functionally equals one in the listings in childhood disability cases, the ALJ assesses the claimant's functioning in six separate "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). That assessment compares the child's performance in each domain with the typical functioning of a child of the same age without impairment. *Id.* § 416.926a(b). The child's impairment is of listing-level severity if there are "marked"

*of Soc. Sec.,* 2023 WL 155424 at *4 (W.D.N.Y. Jan. 11, 2023) ("Because the providers' new opinions give a more complete picture of Daniella's mental impairments, there is a reasonable probability that they would have influenced the ALJ's ultimate RFC determination.") (citation omitted); s*ee also Oscar C. v. Comm'r of Soc. Sec.,* 2022 WL 1746774 at *5 (W.D.N.Y. May 31, 2022) ("[T]he relevance of the new evidence is not that it establishes [p]laintiff's disability, but that it supports the severity of [p]laintiff's limitations and potentially contradicts portions of the ALJ's reasoning.") (citation omitted); *Barbara W. v. Comm'r of Soc. Sec.*, 541 F. Supp. 3d 296, 303 (W.D.N.Y. 2021) ("In sum, the new evidence presented by [p]laintiff at the very least suggests that, during the relevant time period, her condition was more serious than previously thought.") (internal quotation marks and citation omitted).

The Appeals Council therefore erred in rejecting W.M.C.'s medical records from the University of Rochester's clinic. On remand, the Commissioner must consider those records and incorporate them into his determination at step two of whether W.M.C.'s impairments are severe.

---

limitations in at least two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(d). In determining whether limitations are "marked" or "extreme," the ALJ considers functional limitations that result from all impairments—including impairments that have been deemed not severe—and their cumulative effects. *Id.* §§ 416.923, 416.924a(b)(4), 416.926a(a), (c), (e)(1)(i). But the ALJ never conducted that analysis here because he found that all of W.M.C.'s impairments were "slight," causing "no more than minimal functional limitations." *See* Docket Item 3 at 21.

**CONCLUSION**

Neither of the errors that Renee raises may alone be serious enough to require remand.  And on remand, the ALJ might well address the six domains and still conclude that W.M.C. is not disabled.  But the ALJ's decision does not provide enough explanation to support the conclusion that W.M.C. has only slight impairments and minimal limitations.  And that is especially so in light of the new evidence to which the Appeals Council gave short shrift.

The Commissioner's motion for judgment on the pleadings, Docket Item 6-1, is therefore DENIED, and Renee's motion for judgment on the pleadings, Docket Item 4-1, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:     April 7, 2025
           Buffalo, New York

                                           _Lawrence J. Vilardo_
                                           LAWRENCE J. VILARDO
                                           UNITED STATES DISTRICT JUDGE